**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00363-CV**
_____

**IN RE SAM-CONSTRUCTION SERVICES, LLC**

_____

**Original Proceeding**
**163rd District Court of Orange County, Texas**
**Trial Cause No. B190455-C**
_____

**MEMORANDUM OPINION**

In a petition for a writ of mandamus, Relator SAM-Construction Services, LLC ("SAM") argues that the trial court abused its discretion by disposing of SAM's motion to dismiss without addressing the merits of SAM's motion, which asserted that the plaintiff failed to attach a certificate of merit pursuant to Chapter 150 of the Texas Civil Practice and Remedies Code in her first filed pleading against SAM. SAM argues the trial court's refusal to rule on the merits of SAM's motion deprives SAM of an adequate remedy by appeal. The Real Party in Interest, Maricela Salazar-Linares, individually and as representative of the Estate of Martin Linares-Segura

1

("Linares"), argues SAM cannot establish it lacks an adequate remedy by appeal because SAM failed to perfect a timely accelerated appeal. She further argues the trial court correctly denied SAM's motion to dismiss because her claims arise out of errors or omissions in construction, inspection and safety services rather than professional engineering services. We conditionally grant mandamus relief.

Trial Court Proceedings

In 2019 Linares asserted wrongful death and survival claims against South Texas Illumination, LLC, Flex Supply, Inc., and Third Coast Services, LLC. She alleged her husband, Martin Linares-Segura, was electrocuted and killed while working as a construction employee when a side-boom tractor hoisting a light pole contacted overhead powerlines. In 2021 Linares amended her petition to add wrongful death and survival claims against SAM-Construction Services, LLC, SAM Construction LLC, SAM, LLC and SAM Construction and Investment, Inc. The pleadings regarding SAM state, in relevant part:

> 19. At all relevant times, Defendant Sam Construction Services LLC, Sam Construction LLC, Sam, LLC, and Sam Construction and Investment (collectively referred to as "SAM") was hired to inspect the illumination project being performed by all Defendants. According to its website, SAM "provide[s] construction services solutions, including contract administration, construction engineering and inspection, observation, quality assurance and quality management, and the development of quality manuals and specifications"-which, upon information and belief, it was hired to do and/or purported to do in this accident. SAM, according to its website, "supports clients and contractors by putting clear processes in place to keep communication open and maintain project schedules and budgets" and "ensures clients

2

receive the foundational data and management support they need to successfully complete construction work"-which, upon information and belief, it was hired to do and/or purported to do in this accident. Moreover, SAM claims it "provides construction teams around the nation the construction engineering and inspection oversight they need to keep projects compliant, on time, and on budget. . . . [o]ur program managers are already familiar with your state and local requirements . . . [and] work with contractors, consultants, trades, and vendors to keep communication open, maintain project controls, and set clear expectations for quality and performance"-which, based upon information and belief, it was hired to do and/or purported to do in this accident.

Linares alleged SAM's negligence caused the fatal incident, as follows:

26. The death of decedent was caused solely and wholly through the negligence of defendants, in that Defendant, Sam Construction Services LLC, and its servants, agents, and employees were grossly negligent, careless, and reckless in that they failed and neglected to properly park the sideboom tractor or crane, failed and neglected to have the side-boom tractor or crane under proper control, and failed to obtain or maintain the necessary licensure, permits or certifications to operate said side-boom tractor or crane. SAM was further negligent, inter alia, in the following:
(1) Providing construction services solutions, including contract administration, construction engineering and inspection, observation, quality assurance and quality management, and the development of quality manuals and specifications;
(2) Supporting Defendants, clients and contractors by putting clear processes in place to keep communication open and maintain project schedules and budgets and ensuring Defendants and clients receive the foundational data and management support they need to successfully complete construction work;
(3) Providing construction teams around the nation the construction engineering and inspection oversight they need to keep projects compliant, on time, and on budget and ensuring SAM's program managers are already familiar with contractor, municipal, state, and local requirements and are followed;

3

(4) Working with Defendants, contractors, consultants, trades, and vendors to keep communication open, maintain project controls, and set clear expectations for quality and performance

(5) Providing adequate training for its employees, subcontractors and agents in the use of side-boom tractors or cranes;

(6) Providing adequate training for its employees, subcontractors and agents in working near extremely dangerous high voltage electric powerlines;

(7) Adequately supervise employees, subcontractors and agents when working with extremely dangerous equipment;

(8) Warning its employees, subcontractors and agents of the dangers of working near extremely dangerous equipment;

(9) Warning its employees, subcontractors and agents of the dangers of working in and around high voltage electric powerlines;

(10) Instructing its employees, subcontractors and agents in the proper safety procedures when working near extremely dangerous equipment;

(11) Ensuring its employees, subcontractors and agents are properly licensed to operate side-boom tractors or cranes; and

(12) Preparing and providing safety policies or procedures.

(13) Other acts of omission and/or commission to be specified after an adequate time for discovery or at the time of trial.

27. The death of decedent was caused solely and wholly through the gross negligence of defendants, in that Defendant, Sam Construction Services LLC, negligently hired, retained, supervised, and inspected the work of South Texas Illumination, LLC and its employees and/or servants.

Linares also asserted vicarious liability against SAM, alleging:

74. Defendant, SAM-Construction Services LLC, is vicariously liable for the damages proximately caused to Plaintiff by virtue of the negligent conduct of its employees or agents.

75. Plaintiff alleges that Defendant, SAM-Construction Services LLC, had a duty to exercise reasonable care in the training, supervising, warning, instructing, and in the preparation of safety policies and procedures, if any existed, for its employees. SAM-Construction Services LLC, had a non-delegable duty to use ordinary care in providing a safe workplace, including:

(1) Providing adequate training for its employees, subcontractors and agents in the use of side-boom tractors or cranes;

4

(2) Providing adequate training for its employees, subcontractors and agents in working near extremely dangerous high voltage electric powerlines;
(3) Adequately supervise employees, subcontractors and agents when working with extremely dangerous equipment;
(4) Warning its employees, subcontractors and agents of the dangers of working near extremely dangerous equipment;
(5) Warning its employees, subcontractors and agents of the dangers of working in and around high voltage electric powerlines;
(6) Instructing its employees, subcontractors and agents in the proper safety procedures when working near extremely dangerous equipment;
(7) Ensuring its employees, subcontractors and agents are properly licensed to operate side-boom tractors or cranes;
(8) Preparing and providing safety policies or procedures; and
(9) Other acts of omission and/or commission to be specified after an adequate time for discovery or at the time of trial.
76. Plaintiff would show that each and every one of the aforementioned acts and/or omissions singularly and severally, constituted willful and wanton negligence on the part of Defendant South Texas Illuminations, LLC, jointly with Flex Supply, LLC, and Third Coast Services, LLC, which singularly and severally, was a direct and proximate cause of the injuries and damages sustained by Plaintiffs.

Linares alleged negligence per se against SAM:

80. SAM-Construction Services LLC, operated or allowed to be operated a side-boom tractor or crane without proper licensure, and such acts or omissions were a proximate cause of the damages in question, including but not limited to the following acts or omissions:
(1) Failing to maintain the Standard Crane and Derrick Signals in accordance with 29 C.F.R. § 1926.1440(c);
(2) Failing to maintain proper distance from electric power lines in accordance with 29 C.F.R. § 1926.1440(c);
(3) Failing to notify the electric power line owner with notice in accordance with 29 C.F.R. § 1926.1440(c).

Linares alleged "SAM-Construction Services LLC, deviated from the standard of

care and proceeded with conscious indifference to the safety and welfare of Plaintiff.

5

Defendant committed gross negligence in the acts described above, when objectively considering the extreme risk, probability, and magnitude of harm to Martin Linares-Segura."

SAM and Survey and Mapping, LLC, ("SAM, LLC") filed a motion to dismiss pursuant to Chapter 150 of the Texas Civil Practice and Remedies Code. They alleged Linares's claims against the two defendants must be dismissed because both companies were registered professionals within the meaning of Chapter 150 of the Texas Civil Practice and Remedies Code, Linares's claims were based on the provision of professional engineering services, and she did not file a certificate of merit with her First Amended Petition. They argued Linares' pleadings raised claims that involved their allegedly negligent provision of professional engineering services, which she claimed included:

> Providing construction services, solutions, including contract administration, construction engineering and inspection, observation, quality assurance and quality management, and the development of quality manuals and specifications;
> Supporting clients and contractors by putting clear processes m place to keep communication open and maintain project schedules and budgets and ensuring clients receive the foundational data and management support they need to successfully complete construction work;
> Providing construction teams around the nation the construction engineering and inspection oversight they need to keep projects compliant, on time, and on budget and ensuring SAM's program managers are already familiar with contractor, municipal, state and local requirements; and

6

Working with contractors, consultants, trades, and vendors to keep communication open, maintain project controls, and set clear expectations for quality and performance.

A Contract of Engineering Services attached to SAM's motion to dismiss recites that TxDOT authorized SAM to provide "engineering services generally described as Construction Engineering Inspection (CEI) services to assist the State in managing its construction operations before, during, and after the construction of improvements[.]"

In response to the motion to dismiss, Linares argued SAM's liability arose, not from its errors and omissions in providing professional engineering services, but from failing to provide a safe work environment and failing to warn employees of the associated dangers of overhead powerlines in the capacity of construction management services.

In reply, SAM argued the construction management services referred to by Linares are considered as falling within the practice of engineering as defined by the Texas Occupations Code. *See* Tex. Occ. Code Ann. § 1001.0003(b) and (c)(1) ("In this chapter, 'practice of engineering' means the performance of or an offer or attempt to perform any public or private service or creative work, the adequate performance of which requires engineering education, training, and experience in applying special knowledge or judgment of the mathematical, physical, or engineering sciences to that service or creative work. (c) The practice of engineering

7

includes: (1) consultation, investigation, evaluation, analysis, planning, engineering for program management, providing an expert engineering opinion or testimony, engineering for testing or evaluating materials for construction or other engineering use, and mapping[.]"). SAM further argued that Linares had judicially admitted that the decedent was an employee of South Texas Illumination, LLC and Flex Supply, LLC, not SAM. SAM also noted that it signed the TxDOT contract as The Engineer. SAM concluded in its reply that Linares's claims against SAM must be dismissed because Linares failed to file a certificate of merit with her First Amended Petition, which for the first time raised claims against SAM based on SAM's provision of engineering services.

The trial court heard SAM's motion to dismiss on October 13, 2021. Linares conceded that SAM did not employ the decedent. She also argued that some of the services SAM provided have nothing to do with engineering.

On October 14, 2021, SAM filed an objection to Linares's proposed order granting in part and denying in part SAM's motion to dismiss. SAM argued it would be deprived of the relief it was entitled to under section 150.002(e) of the Civil Practice and Remedies Code were the trial court to grant the proposed order on the motion to dismiss without specifying what specific claims the trial court intended to allow to go forward and what claims the order dismissed.

On October 14, 2021, the trial court signed an order, which states:

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

Before this Court is *Defendant, SAM – Construction Services, LC's and Surveying and Mapping, LLC's Amended Chapter 150 Motion to Dismiss.* Having considered the motion, the response, the reply, the evidence submitted, the record, and the arguments of counsel, this Court GRANTS IN PART and DENIES IN PART *Defendant, SAM – Construction Services, LLC's and Surveying and Mapping, LLC's Amended Chapter 150 Motion to Dismiss.*

1. This Court GRANTS the motion as to arising out of the provision of professional engineering services or the practice of engineering; [within the meaning of Tex. Civ. Prac. & Rem. Code § 150.002] but

2. This Court DENIES the motion as to all remaining Plaintiff's claims that do not fall within Defendants' provision of professional engineering services.

It is SO ORDERED.

On November 3, 2021, Linares filed a notice of non-suit without prejudice as to all of her claims against SAM and SAM, LLC.[1] The trial court signed the order granting the nonsuit without prejudice on November 3, 2021.

_____

[1]On November 1, 2021, it appears that neither Relator nor the Real Party in Interest were aware the trial court had already signed the order on SAM's motion to dismiss. On November 1, 2021, SAM, SAM, LLC, and Linares executed an agreement to toll statutes of limitation. The agreement states, in part: "A hearing has been held on the motion to dismiss and a ruling has been made from the bench, but no order has been signed regarding the motion." SAM and SAM, LLC "agreed to forego their right to seek interlocutory appeal on the issue of the grant or denial of their motion to dismiss during the pendency of this Agreement, but reserve the right that, in the event the suit is revived against each or both of them, each of the Parties

On September 16, 2022, Linares brought SAM back into the lawsuit in her Second Amended Petition. Quoting deposition testimony from the Corporate Representative of Third Coast Services, Linares alleged no engineering services were provided by SAM. She alleged, in part:

26. The death of decedent was caused solely and wholly through the negligence of defendants, in that Defendant Sam-Construction Services LLC and its servants, agents, and employees were grossly negligent, careless, and reckless in that they failed and neglected to properly park the side-boom tractor or crane, failed and neglected to have the side-boom tractor or crane under proper control, and failed to obtain or maintain the necessary licensure, permits or certifications to operate said side-boom tractor or crane. SAM was further negligent, inter alia, in the following:

(1) Providing construction services solutions, including contract administration, construction engineering and inspection, observation, quality assurance and quality management, and the development of quality manuals and specifications;

(2) Supporting Defendants, clients, and contractors by putting clear processes in place to keep communication open and maintain project schedules and budgets and ensuring Defendants and clients receive the foundational data and management support they need to successfully complete construction work;

(3) Providing construction teams around the nation the construction engineering and inspection oversight they need to keep projects compliant, on time, and on budget and ensuring SAM's program managers are already familiar with contractor, municipal, state, and local requirements and are followed;

have agreed, that SAM-CS and SAM, LLC will be allowed to raise each and every defense to the Plaintiff's claims and causes of action in the Lawsuit, including but not limited to pursuit of interlocutory appeal concerning the grant or denial of their motion to dismiss." The agreement specifically preserved any rights, claims, or defenses under Chapter 150 of the Civil Practice and Remedies Code. Relator attached the tolling agreement to its motion to stay but omitted it from the mandamus appendix and record.

(4) Working with Defendants, contractors, consultants, trades, and vendors to keep communication open, maintain project controls, and set clear expectations for quality and performance;

(5) Providing adequate training for its employees, subcontractors and agents in the use of side-boom tractors or cranes;

(6) Providing adequate training for its employees, subcontractors and agents in working near extremely dangerous high voltage electric powerlines;

(7) Adequately supervise employees, subcontractors and agents when working with extremely dangerous equipment;

(8) Warning its employees, subcontractors and agents of the dangers of working near extremely dangerous equipment;

(9) Warning its employees, subcontractors, and agents of the dangers of working in and around high voltage electric powerlines;

(10) Instructing its employees, subcontractors, and agents in the proper safety procedures when working near extremely dangerous equipment;

(11) Ensuring its employees, subcontractors, and agents are properly licensed to operate side-boom tractors or cranes; Preparing and providing safety policies or procedures; and

(12) Other acts of omission and/or commission to be specified after an adequate time for discovery or at the time of trial.

27. The death of decedent was caused solely and wholly through the gross negligence of defendants, in that Defendant Sam-Construction Services LLC negligently hired, retained, supervised, and inspected the work of South Texas Illumination, LLC and its employees and/or servants.

On September 21, 2022, SAM filed a supplemental objection to Linares's proposed order on SAM's motion to dismiss. SAM noted that the trial court, in an oral bench ruling, had denied the motion to dismiss *in toto* and that SAM had requested the trial court to "promptly enter a written order accurately reflecting the finding of the Court as pronounced on October 13, 2021."

The trial court heard SAM's supplemental objection to Linares's proposed order on October 21, 2022. The trial court orally denied SAM's objection to the court's order on the motion to dismiss. During the hearing, no one mentioned the trial court had already signed Linares's proposed order the previous year.[2]

Mandamus Review

We may grant mandamus relief to correct a trial court's abuse of discretion when an appeal is an inadequate remedy. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). An abuse of discretion occurs when a trial court's ruling is arbitrary and unreasonable or is made without regard for guiding legal principles or supporting evidence. *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016) (orig. proceeding). We determine the adequacy of an appellate remedy by balancing the benefits of mandamus review against the detriments. *In re Essex Ins. Co.*, 450 S.W.3d 524, 528 (Tex. 2014) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136.

---

[2]An email attached to SAM's motion to stay indicated that on October 27, 2022, the court coordinator stated, "The Judge has not signed [counsel's] Chapter 150 Motion to Dismiss. It is being returned to your office unsigned. On October 14, 2021, the Judge signed an Order Granting in Part and Denying in Part Defendants' Motion to Dismiss. You can request a copy of this order from the District Clerk's office." In its motion for temporary relief, Relator states that when Linares filed her Second Amended Petition "as far as the parties were aware, the trial court had not yet signed an order on SAM-CS's Chapter 150 motion to dismiss[.]" Relator did not include this email in the mandamus appendix and record.

Linares argues we must deny mandamus relief because SAM could have but chose not to pursue a timely accelerated appeal of the trial court's October 14, 2021 Order Granting in Part and Denying in Part Defendants' Motion to Dismiss. But, "[a]n appeal cannot be adequate when the court prevents a party from taking it." *In re Whataburger Restaurants LLC*, 645 S.W.3d 188, 193 (Tex. 2022). In *Whataburger*, the trial court clerk failed to notify the relator that the trial court signed an appealable interlocutory order refusing to compel arbitration. *Id.* Relator filed a petition for a writ of mandamus after it learned that the trial court signed an order too late to perfect an appeal under the rules of procedure governing accelerated appeals and obtained additional time to perfect an appeal. *Id.* at 194; *see* Tex. R. App. P. 4.2, 26.1(a), 26.3; Tex. R. Civ. P. 305a.5. The Supreme Court of Texas held "the relator has demonstrated that it lacks an adequate appellate remedy because the clerk's failure to give notice of the trial court's order deprived it of that remedy." Like the relator in *Whataburger*, SAM has demonstrated it lacks an adequate remedy by appeal and it did not sleep on its rights.

A claim for damages asserted against a professional engineer arises out of the provision of professional services if the claim implicates the engineer's education, training, and experience in applying special knowledge or judgment. *TDIndustries, Inc. v. Citicorp N. Am., Inc.*, 378 S.W.3d 1, 5 (Tex. App.—Fort Worth 2011, no pet.); *see* Tex. Occ. Code Ann. § 1001.003(b). In determining the nature of a party's

13

claims for purposes of a Chapter 150 motion to dismiss, we look to the live pleading on file when the opposing party filed the motion to dismiss. *TD Industries, Inc. v. Rivera*, 339 S.W.3d 749, 753 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Linares asserted a cause of action under the wrongful death and survival statutes. In her First Amended Petition, Linares identified many acts and omissions that she alleged caused her husband's death. In her response to the mandamus petition, Linares posits that "[i]mplicit in the order is that the court thought some of Plaintiff's claims related to SAM's professional engineering services and some did not, or otherwise it would have granted the motion outright and dismissed SAM from the suit." That is precisely the reason why the trial court's order lacks the requisite clarity. By granting the motion in part and denying it in part, the trial court necessarily determined that at least one act or omission alleged by the plaintiff did not arise out of the provision of professional services as that term is defined by section 1001.003 of the Occupations Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 150.001(3). By failing to specify which of SAM's allegedly negligent acts were being dismissed under Chapter 150 because Linares failed to file a certificate of merit and identifying which claims were not, the trial court prevented SAM from properly presenting its arguments to challenge those parts of the ruling that denied SAM's motion to dismiss. The dilemma facing SAM is not unlike a party seeking to challenge an order granting a motion for new trial when the trial court fails to set out

14

the reasons it has disregarded the jury's verdict. *See In re E.I. duPont de Nemours and Co.*, 289 S.W.3d 861, 861-62 (Tex. 2009) (orig. proceeding).

Linares also argues no certificate of merit was required because SAM provided only construction management services, which she claims do not constitute the practice of engineering. Her argument underscores rather than alleviates the concern here: the trial court dismissed something, and we cannot discern what allegations the trial court has allowed to proceed to trial.

We conclude the trial court abused its discretion by failing to sign a sufficiently specific order and in doing so, it deprives the relator of an adequate remedy by appeal. Accordingly, we conditionally grant mandamus relief. We are confident that the trial court will vacate its order of October 14, 2021, which granted in part and denied in part SAM's motion to dismiss. The writ of mandamus shall issue only in the event the trial court fails to comply. Relators' motion for temporary relief is denied as moot.

PETITION CONDITIONALLY GRANTED.

PER CURIAM

Submitted on December 7, 2022
Opinion Delivered December 22, 2022

Before Golemon, C.J., Horton and Johnson, JJ.